COMMONWEALTH *vs.* GEORGE L. MARSH.

Norfolk.    October 7, 1968. — November 29, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, &
REARDON, JJ.

*Constitutional Law,* Speedy trial, Waiver of constitutional rights, Admis-
sions and confessions, Assistance of counsel. *Practice, Criminal,* Speedy
trial, Waiver, Assistance of counsel. *Waiver. Evidence,* Admissions
and confessions, Illegally obtained evidence, Inspection of paper.
*Error,* Whether error harmful.

There was no error, immediately before trial commenced on an indict-
ment on which the defendant had been arraigned about two years
earlier, in denial of his motion to dismiss the indictment on the ground
that his constitutional right to a speedy trial had been denied, where,
although at intervals he had filed motions for a speedy trial or for dis-
missal of the indictment on the ground of denial of his right thereto,
such motions had not been presented to a judge; failure of the defen-
dant's counsel to seek judicial action on such motions implied a waiver
of the right to a speedy trial.  [717–718]
Where a defendant indicted for rape testified at his trial that he had been
the operator of an automobile at the time of commission of the crime
by occupants therein, and the victim and a police officer testified that
the defendant had been present in the automobile, but the defendant
denied that he was one of the rapists, admission of evidence that on the
evening after the crime the defendant, while being held at a police
station on an unrelated charge and immediately before another officer
gave him the warnings required by *Miranda* v. *Arizona,* 384 U. S. 436,
had told that officer that he had been the operator of the automobile,
was "harmless beyond a reasonable doubt."  [718–719]
There was no error at the trial of an indictment for rape committed on a
certain evening in showing to the defendant on cross-examination
before the jury shorts worn by him at the time of his arrest on the
evening following the crime, which, after receiving from a police officer
the warnings required by *Miranda* v. *Arizona,* 384 U. S. 436, the
defendant in reply to the officer's inquiry stated were the shorts worn
by him on the preceding evening, and which he then gave to the officer
on request, where the inquiry and the reply were rightly excluded from
evidence.  [719–720]
In a criminal case, the trial judge has discretion to permit inspection by
the defendant of notes made by a witness for the Commonwealth
before his trial testimony, without the defendant making a formal
demand which would render the notes admissible in evidence on the

offer of the Commonwealth, and, where the defendant's request to inspect is on a voir dire, there are substantial reasons for permitting the inspection. [721]

There was no prejudicial error or abuse of discretion at a criminal trial in a denial of the defendant's request on a voir dire to inspect available notes which had been made by a police officer who testified that he had given the defendant the warnings required by *Miranda* v. *Arizona*, 384 U. S. 436, but who did not use the notes on the stand, where the defendant's answers to the officer's questions following such warnings did not in any way alter the case against the defendant as embodied in other testimony. [722]

INDICTMENT found and returned in the Superior Court on October 1, 1965.

The case was tried before *Tomasello, J.*

*Robert A. Novick* (*Reuben Goodman* with him) for the defendant.

*Richard W. Barry*, First Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J. 1. The defendant has appealed under G. L. c. 278, §§ 33A–33G, from his conviction on October 27, 1967, on an indictment for rape committed August 22, 1965. The indictment was returned October 1, 1965, in the Superior Court in Norfolk County. The case was called for trial on July 5, 1967, but on that day the defendant defaulted. We need not decide the effect, in the circumstances, of the twenty-one months delay (October, 1965, to July, 1967) on the defendant's right to a speedy trial. See *Bishop* v. *Commonwealth*, 352 Mass. 258, 260 (two years "plainly is more than a reasonable time"). *Commonwealth* v. *McGrath*, 348 Mass. 748 (nine months having elapsed, the defendant was entitled to a dismissal unless promptly tried).

The issue is whether, in view of the defendant's failure to present to the court before trial any of several motions for a speedy trial filed by him beginning July 6, 1966, there was a waiver of the right.

The docket and record show motions as follows: (1) "Motion for Speedy Trial" filed July 6, 1966, reading, "The Defendant . . . insists that his case be set down for speedy trial"; (2) "Motion to Dismiss" filed September 8, 1966, "on the grounds that he was denied his Constitutional right to a

speedy trial"; (3) "Motion to Dismiss" filed November 14, 1966, reciting the same ground; (4) "Motion for Speedy Trial" filed March 17, 1967, moving "that he be granted a speedy trial as provided by the Constitution[s] of the United States and the Commonwealth of Massachusetts."

The only indication that any of the foregoing motions came before the court is in the trial transcript. Before the jury were empanelled on October 25, 1967, the defendant's then attorney said, "Just one motion, your Honor, and this has been argued before. This is a motion to dismiss on the grounds that the defendant was denied a speedy trial. He was arraigned on October 4, 1965, and a motion for a speedy trial was filed in this court on June 30, 1966.[1] Therefore, I would renew the motion at this time to dismiss the indictments against the defendant." The trial judge denied the motion. There is no indication in the record or the original papers or the defendant's brief that any of the motions were brought before the court prior to October 25, 1967. The relevant assignment of error specifies the denial on October 25, 1967, of the "Motion to Dismiss." The defendant's brief assumes, as do we, that there was no prior hearing or court order.

We said in *Commonwealth* v. *Hanley,* 337 Mass. 384, 388, "We think that the full intent of the constitutional protection will be afforded by a rule that in the absence of a showing of circumstances which negative the implication, the failure to demand prompt trial implies a waiver of the right thereto."[2]

In our cases holding that the constitutional right has been denied, the issue of the effect of the mere filing of a motion has not arisen; in all the cases the defendants concerned were reasonably diligent in asserting their right to a speedy trial. In *Commonwealth* v. *Green,* 353 Mass. 687, 688–689, motions filed by the defendant came

---

[1] No doubt the intended reference was to the motion of July 6, 1966.

[2] The case does not present the issue of such a long delay that there is a basis for a presumption that a fair trial cannot be had so that the absence of a demand cannot be decisive. See the *Hanley* case (337 Mass. at 388–390).

before the court and were acted on.[3]  In *Bishop* v. *Commonwealth*, 352 Mass. 258, 259–260, seasonable motions, one to withdraw the appeals (for a trial by a six man jury session) and transfer them to the Superior Court, and the second to dismiss, were blocked by notices from the clerk that the motions would not be heard because the Legislature had failed to make appropriate provision for such withdrawal and transfer or to provide funds for personnel for a court session to hear motions to dismiss.  The petitioner "made efforts [unsuccessful for the reasons stated] to have the appeals assigned for trial or the motions assigned for hearing before the Chief Justice of the District Court."  In *Commonwealth* v. *McGrath*, 348 Mass. 748, the issue came to a reasonable resolution by a petition for a writ of habeas corpus (dismissed) and a subsequent direction by the judge for an inquiry of the prosecutor, at the defendant's urging, to ascertain whether the prosecutor would pay the costs of transportation from a Federal prison or, alternatively, dismiss the indictments.  Following a negative answer, the defendant filed and secured a hearing on a motion either to dismiss or to order the District Attorney to pay such costs.

General Laws c. 277, § 72, assuring, with certain qualifications, that an unbailed prisoner shall have a trial within six months "if he requires it" or be bailed on his own recognizance, contemplates a motion filed with the clerk which, because of the statute, will come before a judge in due course. See G. L. c. 277, § 72A, as appearing in St. 1965, c. 343, as to a request by a prisoner made to the Commissioner of Correction for prompt trial which he must forward to the court by certified mail.

Many of the decisions elsewhere which hold that a demand is necessary [4] indicate that the demand must be to

---

[3] Motion to dismiss filed December 12, 1955, denied October 26, 1956; motion of July 22, 1958, for speedy trial or dismissal, denied without prejudice on January 6, 1959; motion for speedy trial filed June 24, 1960, denied without prejudice June 30, 1960.  The dismissal was ordered in this court upon report of the issue under a motion of June 22, 1967.

[4] Some jurisdictions hold that the absence of a demand for trial is not alone the basis for a waiver.  *People* v. *Prosser*, 309 N. Y. 353, 357–360, and cases cited.

the court. 57 A. L. R. 2d 302 (Anno: Waiver or loss of accused's right to speedy trial). *Pietch* v. *United States,* 110 F. 2d 817, 819 (10th Cir.), cert. den. 310 U. S. 648. *Shepherd* v. *United States,* 163 F. 2d 974, 977 (8th Cir.) (a letter addressed to the United States Attorney held insufficient). *Fowler* v. *Hunter,* 164 F. 2d 668, 670 (10th Cir.) (the demand must be addressed to the court in which the indictment is pending). *United States* v. *Lustman,* 258 F. 2d 475 (2d Cir.). *Wright* v. *State,* 97 Ga. App. 653. *State* v. *Couture,* 156 Maine, 231. *State* v. *Smith,* 10 N. J. 84. A few cases suggest that a demand of "record" may be enough. *McCandless* v. *District Court of Polk County,* 245 Iowa, 599. *People* v. *Foster,* 261 Mich. 247, 250. *State* v. *McTague,* 173 Minn. 153.

We hold that the defendant's demand, to negative the implication of waiver, must be so made as to show a desire for prompt trial and reasonable efforts to obtain it. In this case the defendant's motions should have been promptly presented to a judge.[5] All concerned were entitled to view the mere filing of a motion as only a preliminary step to presenting the substance of the matter to the court.

The defendant in his brief appears to recognize the need of court action. He contends that the lack of a hearing was the fault of the District Attorney and that only he could or should have brought the motions to the attention of the court. This is a mistaken and unjustified view. Even though there is no regular criminal motion list, any motion may be brought to the attention of a judge. General Laws

---

[5] That less may be sufficient if the defendant is without counsel is implicit in *Commonwealth* v. *Needel,* 349 Mass. 580. The holding was that, in the particular circumstances shown, inquiry of the clerk as to the dates of the next criminal sessions did not show that the defendant was concerned about being tried promptly. Compare *Needel* v. *Scafati,* 289 F. Supp. 1006 (D. Mass.), wherein Needel prevailed in habeas corpus proceedings upon a showing of circumstances not before this court. There was no prior application to the courts of this Commonwealth for a writ of error. See 28 U. S. C. § 2254 (1964) and the United States cases and our decisions cited in *Cortellesso* v. *Commonwealth, ante,* 514, 517–518, 522–523. See also *Bishop* v. *Commonwealth,* 352 Mass. 258, where, while appeals for trial by jury were pending, relief was given under G. L. c. 211, § 3, for deprivation of the right to a speedy trial.

c. 278, § 1, expressly provides for the addition of cases to the trial list on motion of defendants.[6]

None of our cases warrants the conclusion that what was done in this case would suffice. Defendants who are interested only in laying the groundwork for dismissal in the event of delay should not prevail merely because a motion had previously been filed. Where counsel files motions for trial, but does not seek action on them, it is a reasonable inference that the defendant prefers no trial, and hopes he may escape it because of delay due to crowded dockets or other cause. Waiver of the right to a speedy trial is implicit in such inaction.

2. There appears to be no reversible error in the application of the rule of *Miranda* v. *Arizona*, 384 U. S. 436. [7]

(a) The defendant on the evening after the rape, while being held at a Boston police station on an unrelated charge, was addressed by a police lieutenant who in an interview with the victim of the rape had obtained her identification of a photograph of the defendant. The officer intended to seek arrest warrants against the defendant. He asked the defendant if he was the operator of an automobile, whose passengers had included the victim, which had been approached by a police officer in Brookline when it was stopped there the previous evening. The defendant answered that he was. The officer then told him that he was "a red-hot suspect in a rape case" and, according to his testimony, gave the required constitutional warnings. Testimony as to the prior question and answer was admitted.

The defendant took the stand, testified that he had operated the car and had been at the scene of the rape, and that he was not one of the rapists. Except on that crucial issue, his testimony confirmed that of the victim. His

---

[6] "At each session of the superior court for criminal business, the district attorney, before trials begin, shall make and deposit with the clerk, for the inspection of parties, a list of all cases to be tried at that session, and the cases shall be tried in the order of such trial list, unless otherwise ordered by the court for cause shown. Cases may be added to such list by direction of the court, upon motion of the district attorney or of the defendant."

[7] The arrest occurred prior to the *Miranda* decision; the trial was subsequent. See *Johnson* v. *New Jersey,* 384 U. S. 719.

presence in the automobile was testified to by the Brookline officer. We hold that the evidence of the prewarning admission of presence in the car was "harmless beyond a reasonable doubt." *Chapman* v. *California*, 386 U. S. 18, 24. Indeed, willing acknowledgement by the defendant of his presence in the car, if of any significance, would tend to lend credence to his testimony that he refrained from attack. See, as to the reasonable application of the *Miranda* rule, *Commonwealth* v. *Wilbur*, 353 Mass. 376, 382–383; *Commonwealth* v. *Fisher, ante*, 549, 554–555.

(b) After answering several questions following the warning, the defendant said he did not wish to answer any more questions until he had conferred with his attorney. As the interrogating officer was conducting the defendant back to his cell, the officer asked him if the undershorts he was then wearing were the ones he had worn the night before. The defendant replied affirmatively, saying he had worn them for about a week. At the officer's request the defendant took off his shorts and gave them to the officer.

At the voir dire, the judge ruled that the conversation after the defendant stated his desire to consult his attorney was inadmissible and ruled that the shorts would be suppressed.

The shorts were used in the cross-examination of the defendant.[8] The defendant contends that it was error to display the shorts and inquire about them particularly as the

---

[8] Q. (by prosecutor) "Did you have any relations with anyone that night . . .?" A. "No, I didn't." Q. "Did you bleed at all that night, Mr. Marsh?" A. "No, I didn't." Objection; overruled. Q. "Did you bleed at all?" Objection. Bench conference in which the judge ruled that the prosecutor might ask if the defendant recognized the shorts as his. To the inquiry of defence counsel, "[A]re you going to let in testimony about blood being on the shorts?" the judge said, "We will see what develops." Q. (by prosecutor) "Did you bleed at all on your private parts that night?" A. "No. I didn't. I had no way to bleed." Q. "I show you these [the shorts]. . . . [Do] you recognize them?" A. "Could be mine." "I don't know. They could be mine." Q. "[L]ook . . . a little more carefully. You want to take a look at them?" A. "I am looking at them." Q. "[C]an you make any further positive identification of them?" A. "No, I can't." Q. ". . . [L]et me refresh your memory. Do you remember talking to a Lieutenant Roman at some time?" A. "Yes, I do." Q. "Were the shorts that you were wearing on the evening of August 22, 1965, at some time delivered, some time come into the possession of Lieutenant Roman of the Needham police?" Objection; sustained.

victim had testified that she had bled in the labial area at the time of the assault.

It was not a violation of constitutional privileges to show the shorts to the defendant before the jury. The garment was properly seized by the police as clothing worn by the defendant at the time of his arrest. *Warden, Maryland Penitentiary,* v. *Hayden,* 387 U. S. 294. For all that appears, it was relevant and, in due course of cross-examination, could be made admissible. The garment was not rendered inadmissible by the police inquiry about it. The inquiry itself was, of course, rightly excluded: It was not to be used in any way to establish that the shorts seized on August 23 were worn on August 22. The first ruling suppressing the garment was too broad, as the judge rightly recognized at the later bench conference. See fn. 8. But Lieutenant Roman could have been asked to identify the shorts taken from the defendant on August 23. The defendant could have been asked if he was wearing the same shorts on August 23 as on August 22. With these preliminaries established, and if there was anything on the shorts reasonably tending to support the victim's testimony of an attack by the defendant, we assume the garment would have been admissible even if not directly identified by the defendant.

We do not know whether there was blood on the shorts. We reject the possibility that the prosecutor was intentionally implying something that he reasonably should have understood could not be established by admissible evidence.

The prosecutor made indirect use of the excluded conversation in inquiring whether the defendant recalled talking with Lieutenant Roman. This may have tended to suggest to the defendant that he should not deny that the seized shorts were worn on August 22. But it did not so operate; the line of inquiry came to nothing; and the fact that the preliminary inquiry was made did not import prejudice in the use of the garment in the preliminary examination. Compare *Presley* v. *Pepersack,* 228 F. Supp. 95, 105 (D. Md.), where illegally seized clothing with blood on it was exhibited to the jury though not admitted.

3. There was no prejudicial error in denying the defendant the right to inspect notes made by a witness. On the voir dire the police officer, as stated, testified that he gave the *Miranda* warnings. Having established that the officer had made notes and that they were available, the defendant asked to see them. The judge ruled that he might have them and inspect them but only under a formal demand. Such demand, under the rule reaffirmed in *Leonard* v. *Taylor*, 315 Mass. 580, would have made the notes admissible on the offer of the Commonwealth. The defendant took an exception and argues that the rule of *Leonard* v. *Taylor* should be confined to civil cases.

We think that in a criminal case the judge should have discretion to permit inspection of the notes without a formal demand, and that where the request is on a voir dire, there are substantial reasons for exercising discretion in favor of the inspection. *Jencks* v. *United States*, 353 U. S. 657, 667–669 (written reports of F. B. I. agents ordered produced so far as relevant to matters testified to).[9] See *United States* v. *Krulewitch*, 145 F. 2d 76, 78 (2d Cir.). The earlier case of *Goldman* v. *United States*, 316 U. S. 129, 132, cited in *Leonard* v. *Taylor* (315 Mass. at 583), said "a large discretion must be allowed the trial judge." Some State courts hold that the defendant has a right to inspect such notes. *People* v. *Estrada*, 54 Cal. 2d 713, 715–716. *State* v. *Hunt*, 25 N. J. 514, 523–531. See *People* v. *Scott*, 29 Ill. 2d 97, 108–112; *State* v. *Bradshaw*, 101 R. I. 233, 238–240. The arguments for the rule noted in *Leonard* v. *Taylor* appear inapplicable in a criminal case where the demand is on a voir dire. That there is no criminal pre-trial discovery strengthens the case for allowing inspection. See *People* v. *Riser*, 47 Cal. 2d 566, 585. It is an artificial distinction to allow inspection of notes used on the stand to refresh recol-

---

[9] A statute, 18 U. S. C. § 3500 (1964), enacted after the decision in the *Jencks* case, limited the government's obligation to the production of reports or statements until after the witness had testified and limited the results of the government's refusal to comply to striking the witness' testimony unless the trial judge declared a mistrial. However, the statute recognizes the relevance and importance of the notes.

lection and to decline it where the witness inspects his notes just before being called to the stand. For criticism of the rule exemplified in *Leonard* v. *Taylor* see Wigmore, Evidence (3d ed.) § 2125.

In this case we discern no such prejudice from the questions and answers testified to by the officer as having been asked and given after the asserted *Miranda* warnings (to which the notes may have been relevant) as to justify our holding that there was an abuse of discretion in denying the request to see the notes. The defendant, after the assertion that he was a suspect, said according to the officer: "I don't know anything about it." When told the girl had identified him as one of four men who had raped her, he said, "I tried to help the girl." As to whether he had asked the girl to perform an unnatural act upon him he replied, "I don't know what you're talking about." The defendant's answers did not in any way alter the case against him as embodied in other testimony.

4. The entry must be:

*Judgment affirmed.*