Rubin F. NEEDEL, Petitioner,

v.

Palmer C. SCAFATI, Superintendent of the Massachusetts Correctional Institution at Walpole, Respondent.

Misc. Civ. No. 68–23.

United States District Court
D. Massachusetts.

Sept. 13, 1968.

Reuben Goodman, Robert A. Novick, Edgar Rimbold, Mass. Defenders Committee, Boston, Mass., for petitioner.

Elliott Richardson, Atty. Gen., James B. Krasnoo, Richard L. Levine, Asst. Attys. Gen., Boston, Mass., for respondent.

## OPINION

JULIAN, District Judge.

Rubin F. Needel, a State prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking to overturn his 1964 State court convictions for kidnapping and for assault and robbery while armed. Petitioner's sole contention is that he was deprived of the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.

■ Petitioner has exhausted his State remedies. 28 U.S.C. § 2254. He first raised this issue through counsel before the commencement of trial on September 23, 1964, by a motion to dismiss, which the trial judge denied. Thereafter on appeal to the Supreme Judicial Court petitioner reargued the same issue without success. Commonwealth v. Needel, 1965, 349 Mass. 580, 211 N.E.2d 335.

Two indictments were returned against petitioner on January 4, 1960, by the Hampden County Grand Jury, one charging him with the kidnapping and the other with assault and robbery while armed of one John T. Dowd in Ludlow, Massachusetts, on December 4, 1959.

When the indictments were returned petitioner had been in the custody of officials of the Commonwealth since December 9, 1959, awaiting trial in the Essex County Superior Court on an un-

related charge of armed robbery. That proceeding resulted in a conviction, and on February 10, 1960, petitioner was sentenced by that court to a term of from four to six years. Petitioner first learned of the outstanding Hampden County indictments by word of mouth on that date from one of the officers who was transporting him to the Walpole Correctional Institution to serve the Essex Superior Court sentence. He was not informed of the nature of the Hampden County charges, nor was he provided with copies of the indictments.

Petitioner has been in the custody of the Commonwealth continuously from December 9, 1959, to the present. During this entire period petitioner was an indigent.

In February 1960 the Hampden County authorities lodged a bench warrant against petitioner at the Walpole Correctional Institution to ensure that upon release he would be surrendered to their custody. However, during the four and one-half years between the return of the Hampden County indictments in January 1960 and his arraignment in Hampden County on July 10, 1964, the Commonwealth took no action whatsoever to prosecute the petitioner on either of the two indictments.[1]

With the exception of one day when he was on trial in the Norfolk Superior Court on an unrelated charge, petitioner was at all times after February 10, 1960, available[2] for arraignment and trial on the Hampden County indictments.

On March 12, 1960, petitioner wrote to the Clerk of the Hampden County Superior Court requesting information concerning the nature of the charges set forth in the indictments and the docket numbers of the indictments. The Clerk replied by letter stating that only one indictment, for kidnapping, was outstanding. The crime was not otherwise described in the Clerk's letter. No copy of the indictment was enclosed.

Again, one year later, on March 16, 1961, petitioner wrote to the Clerk inquiring about the number of indictments outstanding against him, the nature of the charges, the docket numbers of the indictments, and the date of the next criminal session. The Clerk responded to this second inquiry by a letter setting forth the information requested as to both indictments, but without describing the crimes except by their short titles. The letter concluded:

"The next criminal session of this court convenes on the first Monday of May next. For further information, we suggest that you write to Matthew J. Ryan, District Attorney, 37 Elm Street, Springfield, Massachusetts."

Again, on October 16, 1961, petitioner wrote to the Clerk requesting copies of the indictments. The Clerk responded by sending to him a copy of only the indictment charging kidnapping.

Finally, on February 20, 1963, petitioner wrote once more to the Clerk requesting a copy of the other indictment, which the Clerk in turn supplied on February 27, 1963, without additional comment. This was the extent of petitioner's correspondence with any officers of the Commonwealth regarding the Hampden

1. Petitioner was released from Walpole on July 2, 1964, upon the expiration of the Essex County sentence. From Walpole he was taken to the Norfolk County Superior Court for a bail hearing on an unrelated offense, made necessary by petitioner's having been granted a new trial in June of 1964 on an earlier Norfolk County conviction. At the Norfolk County bail hearing, petitioner posted bail, but he was then taken into custody and transferred to Springfield for arraignment on the Hampden County indictments.

2. The Hampden County prosecutor could at any time have sought to have petitioner transported to Hampden County under a writ of habeas corpus *ad prosequendum*. No suggestion has been made that penal authorities in this Commonwealth would not have complied readily with such a request, had it been made.

The parties agreed that the Hampden County Superior Court held sessions in January, May and September during the years in question.

County charges. Thus the petitioner was first apprised of the allegations in the kidnapping indictment after a lapse of a year and nine months from the time it was returned, and of the allegations in the robbery indictment after a lapse of nearly three years and two months.

In November 1963, pursuant to the mandate of G.L. c. 277, § 72A,[3] enacted earlier that year, an officer of the Walpole Correctional Institution interviewed petitioner concerning the outstanding Hampden County indictments. On that occasion, for the first time, petitioner was orally advised that he had a right to a prompt trial.

The petitioner was not then, or at any other time, advised in writing of his right to a speedy trial as required to be done by G.L. c. 277, § 72A. More importantly, petitioner was never advised either orally or in writing of the procedures set forth in the State statute for exercising his right to a speedy trial. He never did follow the statutory procedures but was, instead, brought before the Hampden County Superior Court only after his 1960 sentences expired on July 2, 1964. See n. 1 above.

I find that petitioner did not know that he had the right to a speedy trial until he was informed of that right for the first time in November 1963. He took no action at that time because he was in prison, was without counsel and without means to obtain counsel; he did not know what procedures to follow to obtain a trial; he was unaware of his right to have counsel appointed by the Court; he did not know what witnesses he had; so much time had elapsed since he was indicted that he felt it was useless to have a trial. The petitioner is a person of very limited education. He is a sheet metal worker by trade. He has had no contact with his family for about eight and one-half years.[4]

Petitioner was arraigned in Hampden County Superior Court on July 10, 1964, at which time counsel was appointed for the first time to represent him on the Hampden County charges.

Just prior to trial petitioner filed a motion to dismiss on the ground that he had been deprived of his right to a speedy trial. The only evidence submitted in support of that motion was the correspondence between petitioner and the Clerk, described above. The trial judge denied the motion on the grounds that petitioner, although aware of the indictments, had never requested a speedy trial and that a delay of "almost five years" was not so extreme as to make a fair trial impossible.

Petitioner was convicted on both indictments and sentenced to concurrent terms of from 8 to 10 years. He is presently serving those sentences.

**3.** Prior to its 1965 amendment, G.L. c. 277, § 72A, provided in pertinent part:

"The Commissioner of correction shall, upon learning that an untried indictment * * * is pending in any court in the commonwealth against any prisoner serving a term of imprisonment in any correctional institution * * * *notify such prisoner in writing thereof, stating its contents, including the court in which it is pending, and that such prisoner has the right to apply, as hereinafter provided, to such court for prompt trial or other disposition thereof.*

"Such application shall be in writing and given or sent * * * to the commissioner of correction, who shall promptly forward it to such court by certified mail [together with certain other information]. Said commissioner of correction, shall notify the appropriate district attorney by certified mail of such application to the court.

"Any such prisoner shall, within six months after such application is received by the court, be brought into court for trial or other disposition of any such indictment * * * unless the court shall otherwise order." (Emphasis added.)

**4.** Although petitioner has a bad prior criminal record there is no indication in the evidence that he had ever been informed of the right of defendants in criminal cases to a speedy trial, or of the right of indigents charged with crime to have counsel appointed by the Court to assist them.

The Supreme Judicial Court affirmed the convictions, Commonwealth v. Needel, 1965, 349 Mass. 580, 211 N.E.2d 335, holding that

> "The right to a speedy trial is personal and may be waived; in the absence of circumstances negativing the implication, failure to demand prompt trial implies waiver." (349 Mass. at 581, 211 N.E.2d at 336)

With respect to the requirement in G.L. c. 277, § 72A, that the Commissioner of Correction inform a prisoner in writing of his right to a speedy trial and of the statutory procedure for demanding such a trial, the Supreme Judicial Court held, at 581–582, 211 N.E.2d at 337:

> "*Notice* by the commissioner of correction to the defendant *is to be presumed* in view of the bench warrant lodged at the correctional institution in 1960. There is no showing of a demand by the defendant for trial under this statute or at any time before its enactment." (Emphasis added.)

The petitioner argued before the Supreme Judicial Court, as he does here, that had he been arraigned promptly, counsel would have been appointed[5] and that counsel would have advised him of his constitutional rights. This argument was dismissed by the Supreme Judicial Court with the statement (at p. 582, 211 N.E.2d at p. 337) that " * * * on this record, there being no testimony by the defendant on the point, we do not conclude that he was concerned to be tried promptly or that, with competent legal advice, he would have pressed for trial."

The Supreme Judicial Court also noted that although petitioner had testified at trial concerning unsuccessful efforts to locate an alibi witness,[6] that testimony was inconclusive"; thus

> "[a]t the hearing on the motions * * * there was no testimony to show that the defendant was prejudiced by the delay." [7] 349 Mass. at 582, 211 N.E.2d at 337.

■ I find that neither the factual issue of petitioner's waiver of his right to a speedy trial nor the factual issue of whether the petitioner was prejudiced by the delay was adequately developed at the State court hearings. I also con-

---

5. Rule 10 of the Rules of the Supreme Judicial Court which was in effect from 1960 until changed in 1964 provided as follows:

"If a defendant charged with a non-capital felony appears in the Superior Court without counsel, the Court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel * * *."

6. A principal issue at the trial was the identity of the person who committed the alleged crimes. The petitioner has consistently maintained that at the time the crimes were committed he was in Boston and not in Ludlow.

7. The petitioner's appeal was decided by the Supreme Judicial Court in 1965. In Commonwealth v. Green, decided three years later, Mass.Adv.Sh. (1968) 309, p. 312, 234 N.E.2d 534, p. 536, the Court, however, had this to say:

"The Commonwealth argues that the defendant has not shown that the delay was to his prejudice. Under the analogus mandate of the Sixth Amendment of the Constitution of the United States, it has been held that prejudice need not be affirmatively shown. [Cases cited.] *Prejudice is necessarily inherent in any long delay.* [Cases cited.] In Bishop v. Commonwealth [1967] 352 Mass. 258, 225 N.E.2d 345, no showing of prejudice was required after a delay of two years." (Emphasis added.)

In this connection see also United States v. Lustman, 1958, 2 Cir., 258 F.2d 475, cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109. On pages 477–478 the Court states:

" * * * This leaves a period of approximately four years during which nothing was done to bring this case to trial. This was an undue delay. The Government argues that appellant has not made a convincing demonstration that the delay prejudiced him in the presentation of his case and, although we agree, we think that a showing of prejudice is not required when a criminal defendant is asserting a constitutional right under the Sixth Amendment."

clude upon a consideration of the pertinent part of the record of the State court proceeding as a whole that the findings of waiver and lack of prejudice are not fairly supported by the record in the State proceeding.

■ Since the factual issues of waiver and prejudice were not adequately developed at the State court hearings, the requirement of 28 U.S.C. § 2254(d) that the State courts' determination of factual issues shall be presumed to be correct is inapplicable to those issues. Thus this Court is not bound by the State courts' determination that petitioner waived his right to a speedy trial and was not prejudiced by the delay.

■ In each of the years 1960, 1961, 1962, 1963 and 1964 the Hampden County Superior Court held sittings in January, May and September. Thus from January 1960 to July 1964 a total of thirteen sittings were held. Each sitting lasted a month. The petitioner was continuously a prisoner of the Commonwealth during this entire period, and was at all times available for arraignment. Any obstacle that may have prevented the Commonwealth from bringing the petitioner before the Court for arraignment during this period would be a matter peculiarly within the knowledge of the Commonwealth. The Commonwealth, however, offers no reason, explanation or excuse for the protracted delay in arraigning the petitioner. I can conceive of none. I find that there was no legitimate reason for the delay.

The felony warrant or detainer on file at the prison against the petitioner from February 1960 until July 2, 1964, while not in itself a factor directly influencing petitioner's eligibility for parole, did in fact have an indirect adverse effect there-

on during that period. This appears from the letters of the Chairman of the Massachusetts Parole Board, dated April 9 and May 2, 1968, received in evidence by stipulation of the parties, and from chapter 127, section 130, of the General Laws of Massachusetts which provides that no prisoner shall be granted parole unless the parole board "is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law. * * * " [8] The felony warrant lodged at the prison against the petitioner negatived the probability that he would "remain at liberty" if released on parole.

It further appears from the same letters that the parole board considered as essential prerequisites to petitioner's parole eligibility whether he had "been sufficiently rehabilitated" and whether his behavior indicated "that he [might] not be a further risk to the community." In this regard, under policies of the State Department of Correction, the fact that a felony warrant was on file against petitioner at Walpole did prevent his being considered for transfer to a prison camp and his being considered for certain work assignments such as trusty positions,[9] which in turn restricted his opportunities to demonstrate that he had undergone rehabilitation.

The needlessly prolonged existence of the felony warrant at the prison was oppressive in its impact upon the petitioner.

■ The Commonwealth was under a duty to inform the petitioner of the allegations in the indictments and to arraign him on the indictments without unnecessary and unreasonable delay.

---

8. The entire relevant part of that section reads as follows:

"No prisoner shall be granted a parole permit merely as a reward for good conduct but only if the board or officer having jurisdiction is of the opinion that there is a reasonable probability that, if such prisoner is

released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. * * * "

9. Letter dated April 5, 1968, from State Commissioner of Correction, introduced into evidence by stipulation of the parties.

In Commonwealth v. McGrath, 1965, 348 Mass. 748, 751–752, 205 N.E.2d 710, 713–714, the Court said:

"Some courts have held, in effect, that once a State commences a criminal prosecution, it has the duty by appropriate action to prevent undue delay in bringing the accused to trial. People v. Piscitello, 7 N.Y.2d 387, 389, 198 N.Y.S.2d 273, 165 N.E.2d 849. [Other cases also cited] * * * We agree with the view taken by the Court of Appeals in People v. Piscitello * * *. There it was held that since the defendant could have been produced in a State Court upon request, his Federal detention 'affords neither explanation nor excuse' for undue delay in bringing him to trial. It is true that the duty imposed upon the Commonwealth may, as here, entail expense but this in itself should not be sufficient to deprive the defendant of a speedy trial. * * * We hold that the right to a speedy trial contemplates that the Commonwealth will take reasonable action to prevent undue delay in bringing a defendant to trial, even though some expense may be involved in bringing him into the Commonwealth and returning him to Federal custody. The Commonwealth must, within a reasonable time, either secure the defendant's presence for trial or dismiss the indictments." [10]

■ The district attorney's failure to take any steps whatsoever to prosecute the indictments for four and one-half years from the time they were returned was completely unjustified and constituted, at the very least, clear negligence on his part.

■ I find that because of the district attorney's negligence and the Commonwealth's resulting failure to arraign the petitioner within a reasonable time he was deprived of the assistance of counsel in the investigation of the charges, in attempting to find and interview the alibi witnesses he claims to have had, and in otherwise preparing his defense, from at least May 1960 until his arraignment on July 10, 1964, when he was for the first time provided with counsel. There can be little doubt that the effectiveness of the assistance which he finally received had been impaired by the long delay.[11] On the facts of this case such deprivation was prejudicial to the petitioner.[12]

■ The unreasonably long, unjustified, oppressive and prejudicial delay of four and a half years in the prosecution

10. "No one questions that a defendant is entitled to a speedy trial * * * or that the burden of proceeding promptly rests upon the state and not on the defendant." People v. Piscitello, 1960, 7 N.Y.2d 387, 388, 198 N.Y.S.2d 273, 274, 165 N.E.2d 849, 850.

This requirement that the prosecutor proceed with orderly expedition to bring defendant to trial is established by Federal law as well:

"The prosecuting authorities should act with reason. Their endeavor should be to bring the defendant to trial as soon as that may reasonably be done." United States v. Banks, 1966, 4 Cir. 370, F.2d 141, 144, cert. denied, 1967, 386 U.S. 997, 87 S.Ct. 1317, 18 L.Ed.2d 345.

"* * * I do not conceive it to be the duty of a defendant to press that he be prosecuted upon an indictment under penalty of waiving his right to a speedy trial if he fails to do so. It is the duty of the public prosecutor, not only to prosecute those charged with crime, but also to observe the constitutional mandate guaranteeing a speedy trial." United States v. Dillon, 1960, S.D.N.Y. 183 F.Supp. 541, 543.

11. In Taylor v. United States, 1956, 99 U.S.App.D.C. 183, 238 F.2d 259, the Court stated at page 262:

"The long lapse of time between the commission of the offenses and the trial, the incarceration of appellant throughout the entire interim, and the resulting handicap to the procurement of witnesses who might have supported appellant's alibi, or any other defense, must seriously have handicapped the preparation of a defense."

12. See Glasser v. United States, 1942, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, where the Court said:

"The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

of the indictments constituted a denial of petitioner's constitutional right to a speedy trial unless he waived the right.

The right to a speedy trial is a fundamental right secured by the guarantee of the Sixth Amendment to the Constitution of the United States.

"We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." Klopfer v. State of North Carolina, 1967, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1.

 The right to a speedy trial is a personal right and may be waived by the accused. The question of waiver of a fundamental, federally guaranteed, constitutional right is a federal question controlled by federal law. There is a presumption against the waiver of constitutional rights. For a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right. Brookhart v. Janis, 1966, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314.

 Every reasonable presumption is indulged *against* the waiver of fundamental rights. Glasser v. United States, 1942, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680. Acquiescence in the loss of fundamental rights may not be presumed. Johnson v. Zerbst, 1937, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

 Until November 1963 (46 months after indictment) petitioner did not know that he had the right to a speedy trial. Since he did not know of the existence of the right he could not intelligently or understandingly or intentionally relinquish or abandon it. Petitioner was an indigent prisoner, ignorant of his rights, and deprived of the assistance of counsel. His failure to request or demand trial after he was made aware of his right to a speedy trial, is not a sufficient basis for an inference that he had waived it.[13] When he was told of

his right in November 1963, he was not told and did not know what procedures he was to follow to secure counsel or a trial. After he was provided with counsel at his arraignment on July 10, 1964, petitioner appropriately moved for dismissal at the first subsequent sitting of the Hampden Superior Court in September 1964 and before the commencement of his trial.

I find that the defendant never waived his right to a speedy trial.

In the consideration of the petitioner's case I have been mindful of the decisions in the cases of United States v. Ewell, 1966, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed. 2d 627, Fleming v. United States, 1967, 1 Cir., 378 F.2d 502, and Carroll v. United States, 1968, 1 Cir., 392 F.2d 185. They are precedents that are binding upon me. In each of them it was held that the right of the accused to a speedy trial had not been violated.

In *Ewell* nineteen months passed between the original arrests and the hearings on the indictments. The delay was caused by court proceedings which made it necessary to reindict the defendants. The Court held that the delay did not in itself demonstrate a violation of the Sixth Amendment guarantee of a speedy trial. The Court stated (p. 120, 86 S.Ct. p. 776):

"This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the

---

13. Such demand is not required where the defendant because of imprisonment, ignorance, indigence, and lack of counsel, was not in a position to claim his

right. See United States v. Lustman, 1958, 258 F.2d 475, 478, and United States v. Chase, 1955, N.D.Ill., 135 F. Supp. 230, 231.

accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041."

In *Fleming* the indictment was returned on April 23, 1965. The file in the District Court shows that the defendant failed to appear for arraignment on April 28, 1965; that he was brought before the Court on a warrant of arrest and arraigned on May 7, 1965; and that he was represented by counsel at the arraignment and at every subsequent stage of the proceedings. He was tried on March 17 and 18, 1966. There was a delay of only two weeks between indictment and arraignment, and eleven months from indictment to trial. There was no indication that the defendant was prejudiced by the delay.

In *Carroll* the defendant was indicted on June 1, 1966. He was scheduled to be arraigned on August 1, 1966. Defendant, however, was then serving a state court sentence in Mississippi where he remained until March 21, 1967. He was then taken into federal custody and released on bail. He was arraigned in Boston on May 22, 1967, and tried and convicted on November 17, 1967. There was a delay of nearly twelve months between indictment and arraignment. The first ten months of this delay was caused by the defendant's absence from Massachusetts. The total delay from indictment to trial was about eighteen months. It was not shown that defendant was prejudiced by reason of the delay.

In *Ewell, Fleming* and *Carroll* the delay was not unreasonably long; it was not without reason or legitimate purpose; and in each instance it was not shown to have been oppressive or prejudicial to the defendant.

In contrast, the delay in the case before me was of extraordinary duration; it was utterly without reason or legitimate purpose; it was prejudicial and oppressive to the petitioner; it was in no way caused by the petitioner but solely by the clear negligence of the prosecutor. During the long delay between his indictment and his arraignment, the petitioner was helpless to take any effective action in his own behalf by reason of his imprisonment, his indigence, ignorance of his rights, and lack of counsel.

I hold that the petitioner's Sixth Amendment right to a speedy trial was violated and that his conviction cannot stand. The writ of habeas corpus will issue, and respondent is ordered to release the petitioner forthwith.